FILED

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2010 FEB 16  12: 45

FIRST NATIONAL INSURANCE COMPANY OF AMERICA

CASE NO. 3:10-CV-137-J-34JRK

Plaintiff

DIVISION

v.

HARBOR CONSTRUCTION COMPANY, INC.,
ROBERT C. HARBOURNE, EMMA D. HARBOURNE,
BRUCE E. SPENCER AND DIANE KAY SPENCER.

Defendants

_____/

## COMPLAINT

Plaintiff, First National Insurance Company of America ("First National"), by and through its undersigned counsel, hereby files this Complaint against Harbor Construction Company, Inc., Robert C. Harbourne, Emma D. Harbourne, Bruce E. Spencer, Diane Kay Spencer (collectively referred to as "Indemnitors") and in support thereof states:

### PARTIES

1. First National Insurance Company of America ("First National") is a corporation organized under the laws of the State of Washington, with its principal place of business in the State of Washington.

2. Harbor Construction Company, Inc. ("Harbor") is a Georgia for-profit Corporation, with its principal place of business in Savannah, Georgia.

3. Robert C. Harbourne is a person of the full age of majority and a resident and domiciliary of Scottsdale, Arizona.

4. Emma D. ("E.D.") Harbourne is a person of the full age of majority and a resident and domiciliary of Scottsdale, Arizona.

5. Bruce E. Spencer is a person of the full age of majority and a resident and domiciliary of Savannah, Georgia.

6. Diane Kay Spencer is a person of the full age of majority and a resident and domiciliary of Savannah, Georgia.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), the amount in controversy exceeds $75,000.00 exclusive of interest and costs and the dispute is among parties of diverse citizenship: no Defendant is a citizen of the same state as the Plaintiff.

8. Venue is properly placed in this Court pursuant to 28 U.S.C. § 1391(a) as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## GENERAL ALLEGATIONS

14. First National is a surety company that issues payment and performance bonds and stands as surety for selected contractors.

15. Sea Tech Marine Int'l, Inc., a/k/a Sea Tech Marine International, Inc. ("Sea Tech") is or was a contractor in the business of performing construction work.

16. In order to submit bids on and obtain public projects, Sea Tech required bid, performance and payment bonds.

17. One of those projects was with the Jacksonville Port Authority ("JPA")

referred to as the Kennedy Station dredging project (the "Project")

18. In order to obtain bonding for the Project, Sea Tech sought the assistance of Harbor, Robert C. Harbourne, Emma D. Harbourne, Bruce E. Spencer, and Diane Kay Spencer.

19. Sea Tech and Harbor entered into a business relationship, including a written Business Agreement, in connection with the agreement of Harbor, Robert C. Harbourne, Emma D. Harbourne, Bruce E. Spencer, and Diane Kay Spencer to assist Sea Tech in obtaining bonding for the Project. A copy of the Business Agreement is attached as Exhibit "A."

20. Harbor had a prior bonding relationship with First National and Harbor, Robert C. Harbourne, Emma D. Harbourne, Bruce E. Spencer, and Diane Kay Spencer, executed a General Agreement of Indemnity for Contractors dated July 27, 2000 (the "2000 Indemnity Agreement"). A copy of the 2000 Indemnity Agreement is attached as Exhibit "B."

21. Harbor and Sea Tech sought to obtain bonding from First National for the Project.

22. First National was unwilling to issue bonds to Sea Tech without the indemnity of Harbor, Robert C. Harbourne, Emma D. Harbourne, Bruce E. Spencer, and Diane Kay Spencer.

23. On or about February 4, 2004, in order to induce First National to stand as surety for Sea Tech; Harbor Construction Company, Inc., Robert C. Harbourne, Emma D.

("E.D.") Harbourne, Bruce E. Spencer, and Diane Kay Spencer, along with Sea Tech, Sea Tech Machines, Thomas Hopkins, Margaret P. Hopkins, John B. Kowkabany, Paula S. Kowkabany (collectively referred to as "Indemnitors") executed a General Agreement of Indemnity for Contractors, dated February 4, 2004, in favor of First National (the "2004 Indemnity Agreement"). A copy of the 2004 Indemnity Agreement is attached as Exhibit "C." The 2000 Indemnity Agreement and the 2004 Indemnity Agreement are collectively referred to as the "Indemnity Agreements."

24. Under the Indemnity Agreements, the Indemnitors agreed to the following:

> **INDEMNITY TO SURETY:** Undersigned agree to pay to Surety upon demand
>
> 1. All loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorneys fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Undersigned to make arrangement for Surety's legal representation), consultant fees investigative costs and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the Undersigned.
>
> In addition the Undersigned agree to pay the Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement;
>
> 2. An amount sufficient to discharge any claim made against Surety on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any bond;
>
> 3. Any original, additional or renewal premium due by any bond.

25. At the request of Harbor and Sea Tech and in reliance on the Indemnity

Agreements, First National executed a Statutory Payment Bond and Performance Bond, Bond Number 6244349, in the penal sum of $2,420,000.00 (the "Bond") naming Sea Tech as principal, and the JPA as obligee, in connection with the Project. (A true copy of the Bond is attached as Exhibit "D.")

26.   Certain subcontractors, laborers, and/or materialmen of Sea Tech on the Project alleged that they had not been paid by Sea Tech for work performed or materials provided on the Project, and made claim under the Bond.

27.   Sea Tech failed to resolve certain claims on the Project and the following lawsuits were filed against First National:

1. "Hydro Terra Environmental Services, Inc. v. Sea Tech Marine International, Inc., and First National Insurance Company of America," bearing case number 16-2005-CA-001128 on the docket of the Fourth Judicial Circuit Court in and for Duval County, Florida (the "Hydro Terra Litigation").

2. "Moran Environmental Recovery, LLC v. First National Insurance Company of America v. Aerostar Environmental Services, Inc.," bearing case number 16-2004-CA-008353 on the docket of the Fourth Judicial Circuit Court in and for Duval County, Florida, in which Moran claimed that it was entitled to $129,269.89, plus interest, costs and fees on the Project; and Aerostar filed a counterclaim against First National claiming that it was owed $158,393.53, which claim was thereafter amended to seek $22,058.33 in subcontract balances and delay damages in excess of $150,000.00 (the "Aerostar Claim").

28. Harbor was notified of the Hydro Terra Litigation.

29. Harbor and Sea Tech failed to resolve the Hydro Terra Litigation. After trial, Judgment was entered against First National and Sea Tech on December 1, 2008 for the sum of $373,433.46, plus interest costs and attorneys' fees on the Project. The Final Judgment is attached as Exhibit "E."

30. Sea Tech and First National appealed the Fourth Circuit ruling in the Hydro Terra Litigation, and the First District Court of Appeal affirmed the judgment against First National and Sea Tech on October 21, 2009.

31. First National has paid Hydro Terra the sum of $410,467.41 in partial satisfaction of the Final Judgment. The Partial Satisfaction is attached as Exhibit "F."

32. The amount of attorneys' fees to which Hydro Terra is entitled under the Final Judgment has not been determined by the Court. Hydro Terra has claimed that it is entitled to the sum of $397,569.53 in attorneys' fees and costs.

33. With the consent of Robert C. Harbourne, First National paid to Aerostar the sum of $40,0000.00 to resolve the Aerostar Claim.

34. First National has incurred and continues to incur attorneys' fees and expenses in defending the Hydro Terra Litigation, and incurred attorneys' fees and expenses in defending and resolving the Aerostar Claim, and in enforcing the Indemnitors' obligations under the Indemnity Agreements.

35. By letter dated November 16, 2009, First National requested that the Harbor, Robert C. Harbourne, Emma D. ("E.D.") Harbourne, Bruce E. Spencer, and

Diane Kay Spencer satisfy the principal amount of the judgment awarded in the Hydro Terra Litigation with accrued interest. A true and correct copy of the November 16, 2009 letter is attached as Exhibit "G."

36. In acknowledgement of the indemnity obligation, Harbor paid to First National the sum of $100,000.00 toward First National's loss. This occurred prior to the November 16, 2009 demand. First National has also recovered the sum of $11,146.37 from other sources to apply toward its loss.

37. Despite demand, and in breach of the Indemnity Agreements, Harbor, Robert C. Harbourne, Emma D. ("E.D.") Harbourne, Bruce E. Spencer, and Diane Kay Spencer have refused and/or failed to reimburse First National for the remainder of its loss, which loss paid to date, net of recoveries, is $607,916.60.

38. First National has retained the undersigned attorneys to represent it in this action and is obligated to pay these attorneys a reasonable fee for the services rendered.

39. All conditions precedent to maintaining of this action have occurred, been excused, or otherwise been waived.

## COUNT ONE – SPECIFIC PERFORMANCE

40. First National incorporates by reference all allegations contained in paragraphs 1 through 39 of the Complaint.

41. Harbor, Robert C. Harbourne, Emma D. ("E.D.") Harbourne, Bruce E. Spencer, and Diane Kay Spencer have refused and/or failed to comply with the terms of the Indemnity Agreements, including the "Indemnity to Surety" provisions requiring the

Indemnitors to indemnify First National and to deposit collateral security with First National.

42. First National is entitled to specific performance of the Indemnity Agreements, and to an order compelling Harbor, Robert C. Harbourne, Emma D. ("E.D.") Harbourne, Bruce E. Spencer, and Diane Kay Spencer to deposit collateral security with First National in an amount sufficient to collateralize it against Hydro Terra's claim for attorneys' fees and costs, which claim is in the amount of $397,569.53.

## COUNT TWO: *QUIA TIMET*

43. First National incorporates by reference all allegations contained in paragraphs 1 through 39 of the Complaint.

44. First National has incurred losses as a result of the Hydro Terra Claim and the Aerostar Claim, and reasonably anticipates and/or justifiably fears that it will incur additional losses, including losses resulting from attorneys' fees and expenses.

45. By virtue of the equitable doctrine of *quia timet*, First National is entitled to have Harbor, Robert C. Harbourne, Emma D. ("E.D.") Harbourne, Bruce E. Spencer, and Diane Kay Spencer place funds or other security with First National sufficient to cover the potential liability of First National under the Bond, including attorneys' fees and expenses.

## COUNT THREE – EXONERATION

46. First National incorporates by reference all allegations contained in paragraphs 1 through 39 of the Complaint.

47. Claims have been asserted against First National under the Bond. By virtue of the equitable doctrine of exoneration, First National is entitled to have Harbor, Robert C. Harbourne, Emma D. ("E.D.") Harbourne, Bruce E. Spencer, and Diane Kay Spencer place funds or other security with First National sufficient to cover the potential liability of First National under the Bond, including attorneys' fees and expenses.

## COUNT FOUR – BREACH OF CONTRACT AND INDEMNITY

48. First National incorporates by reference and reavers all allegations contained in paragraphs 1 through 39.

49. Despite amicable demand, Harbor, Robert C. Harbourne, Emma D. ("E.D.") Harbourne, Bruce E. Spencer, and Diane Kay Spencer have refused and/or failed to honor their indemnity obligations to First National.

50. Pursuant to the Indemnity Agreements, Harbor, Robert C. Harbourne, Emma D. ("E.D.") Harbourne, Bruce E. Spencer, and Diane Kay Spencer are liable to indemnify First National from all claims, damages, expenses, and losses incurred by First National by reason of having executed the Bond or by account of Harbor, Robert C. Harbourne, Emma D. ("E.D.") Harbourne, Bruce E. Spencer, and Diane Kay Spencer default under the Indemnity Agreements.

51. First National is entitled to judgment against Harbor, Robert C. Harbourne, Emma D. ("E.D.") Harbourne, Bruce E. Spencer, and Diane Kay Spencer enforcing the Indemnity Agreement, requiring Harbor, Robert C. Harbourne, Emma D. ("E.D.") Harbourne, Bruce E. Spencer, and Diane Kay Spencer to indemnify and reimburse First

National for all losses incurred by First National by reason of having executed the Bond or by account of the default of Harbor, Robert C. Harbourne, Emma D. ("E.D.") Harbourne, Bruce E. Spencer, and Diane Kay Spencer under the Indemnity Agreements.

### COUNT FIVE - ATTORNEYS' FEES AND COSTS

52.   First National incorporates by reference and reavers all allegations contained in paragraphs 1 through 39.

53.   Despite amicable demand, Harbor, Robert C. Harbourne, Emma D. ("E.D.") Harbourne, Bruce E. Spencer, and Diane Kay Spencer have refused and/or failed to honor their indemnity obligations to First National.

54.   Pursuant to the Indemnity Agreements, Harbor, Robert C. Harbourne, Emma D. ("E.D.") Harbourne, Bruce E. Spencer, and Diane Kay Spencer are liable to First National for all attorneys' fees, costs and expenses incurred in connection with this action to enforce the indemnity obligations of Harbor, Robert C. Harbourne, Emma D. ("E.D.") Harbourne, Bruce E. Spencer, and Diane Kay Spencer under the Indemnity Agreements.

WHEREFORE, after due proceedings are held, First National Insurance Company prays that the Court enter judgment in its favor and against Harbor, Robert C. Harbourne, Emma D. ("E.D.") Harbourne, Bruce E. Spencer, and Diane Kay Spencer, as follows:

1.   Ordering Harbor, Robert C. Harbourne, Emma D. ("E.D.") Harbourne, Bruce E. Spencer, and Diane Kay Spencer to deposit collateral security with First National sufficient to cover the potential liability of First

National under the Bond, including attorneys' fees and expenses, including the claim of Hydro Terra for attorneys' fees and expenses in the amount of $397,569.53;

2. Ordering Harbor, Robert C. Harbourne, Emma D. ("E.D.") Harbourne, Bruce E. Spencer, and Diane Kay Spencer to indemnify and reimburse First National for all losses incurred by First National by reason of having executed the Bond or by account of their default under the Indemnity Agreements, which loss paid to date, net of recoveries, is $607,916.60;

3. Awarding to First National all attorneys' fees, costs and expenses incurred in enforcing the Indemnity Agreements; and

4. For such additional relief as this Court may deem just and proper.

/s/ Lila Ross
Alberta L. Adams
Fla. Bar No. 80063
aadams@mpdlegal.com
Lila K. Ross
Fla. Bar No. 44124
lross@mpdlegal.com
MILLS PASKERT DIVERS
100 North Tampa Street, Suite 2010
Tampa, Florida 33602
Telephone: (813) 229-3500
Facsimile: (813) 229-3502
*Attorneys for First National Insurance Company of America*